Filed 3/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048019 |
| v. | (Super. Ct. No. 10ZF0091) |
| WESLEY LEONEL SOLIS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge. Affirmed as modified.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

Under the Eighth Amendment, juvenile offenders who commit homicide cannot be sentenced to prison for life without the possibility of parole (LWOP), except in the rare case where their crimes reflect irreparable corruption and they have no prospects for reform. Although appellant was convicted of special circumstances murder, and was thus statutorily eligible for LWOP, the trial judge determined he did not come within the small class of juvenile offenders who are deserving of this most serious of punishments. While recognizing appellant's crime was very serious, the judge stated, "I don't see [appellant] as an individual [who] at one month into his 17th birthday is so evil, that his crime reflects irreparable corruption. I just don't see it that way." But, immediately after sparing appellant a straight LWOP sentence, the judge turned around and sentenced him to 50 years to life in prison.

For constitutional purposes, we discern no material difference between a sentence of LWOP and 50 years to life. Because appellant's sentence deprives him of a meaningful opportunity for parole, it is facially unconstitutional. However, in addressing the issue of juvenile sentencing, the Legislature has recently decreed that offenders such as appellant shall be afforded a parole hearing after serving 25 years in prison. This legislation gives appellant what the Constitution compels: A meaningful opportunity to demonstrate maturity, rehabilitation and fitness to reenter society at some point in the future. The legislation is designed to apply to appellant's sentence by operation of law, but to ensure he receives the benefit of the statute, we will modify his sentence to include a minimum parole eligibility date of 25 years. In all other respects, we affirm the judgment.

FACTS AND VERDICT

On June 28, 2008, appellant was a 17-year-old member of the Citron Street gang. That night, he and his fellow gang members confronted Mario Barajas and other members of a rival gang in an area claimed by Citron Street. During the confrontation, someone in Barajas' group fired a gunshot. In response, appellant chased Barajas and

2

cornered him between two apartment buildings. He then fired two shots at Barajas. The first shot struck Barajas in the chest, killing him, and the second shot missed Barajas and lodged in the dresser mirror of a nearby apartment unit.

Appellant was not arrested for the shooting until nearly a year later, on June 1, 2009. He told the police the initial shot fired from Barajas' group tore through his clothing. And after he cornered Barajas in the alley, Barajas came toward him, so he shot him in self-defense.

At trial, the defense presented evidence appellant's cognitive functioning is in the borderline retarded range. Defense counsel argued this impaired appellant's ability to make rational decisions, and given the circumstances of the shooting, he was, at most, guilty of voluntary manslaughter. The jury, however, convicted appellant as charged of first degree murder, shooting at an inhabited dwelling and street terrorism. (Pen. Code, §§ 187, subd. (a), 246 & 186.22, subd. (a).)[1]

As to the murder count, the jury found true the special circumstance allegation appellant murdered Barajas to further the activities of his gang (§ 190.2, subd. (a)(22)), as well as the allegation he caused Barajas' death by personally discharging a firearm (§ 12022.53, subds. (c), (d)). The jury also found appellant acted for the benefit of a criminal street gang in committing the murder and the shooting offense. (§ 186.22, subd. (b).)

SENTENCING

Given the jury's true finding on the special circumstances allegation, the trial court had the discretion to sentence appellant to LWOP or 25 years to life on the murder count. (§ 190.5, subd. (b).) But the court had no discretion on the gun enhancement; rather, it was required to impose a mandatory sentence of 25 years to life, based on the jury's finding appellant murdered Barajas with a firearm. (§ 12022.53,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

3

subds. (d), (g) & (h).)  Thus, under California's sentencing scheme, appellant faced a mandatory minimum term of 50 years to life in prison.

Because appellant was a juvenile at the time of his crimes, defense counsel argued it would be cruel and unusual to sentence him to 50 years to life in prison.  In so arguing, defense counsel relied primarily on *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), and *Miller v. Alabama* (2012) __ U.S. __ [132 S.Ct. 2455] (*Miller*), a series of cases interpreting the Eighth Amendment in the context of juvenile sentencing.  *Graham* prohibits LWOP for juvenile nonhomicide offenders, *Caballero* prohibits de facto LWOP for juvenile nonhomicide offenders, and *Miller* prohibits mandatory LWOP for juvenile homicide offenders.

The underlying rationale of these decisions is that "[b]ecause juveniles have diminished culpability and greater prospects for reform," as compared to adult offenders, "'they are less deserving of the most severe punishments.'  [Citation.]"  (*Miller, supra*, 132 S.Ct. at p. 2464.)  Indeed, the United States Supreme Court has made it clear that the "appropriate occasions for sentencing juveniles to [LWOP] will be uncommon" and that such punishment should be reserved for "the rare juvenile offender whose crime reflects irreparable corruption."  (*Miller, supra*, 132 S.Ct. at pp. 2468-2469.)  Accordingly, "sentencers in homicide cases [must] 'take into account how children are different [from adults], and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'  [Citation.]"  (*Caballero, supra*, 55 Cal.4th at p. 268, fn. 4.)  Absent exceptional circumstances, juvenile offenders must be given a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  (*Graham, supra*, 560 U.S. at p. 75.)

The prosecution's position at sentencing was that, although *mandatory* LWOP for juvenile homicide offenders is unconstitutional, appellant deserved LWOP because he is a hardened gang member who committed an egregious murder and has no

4

prospects for reform. The defense disputed that characterization. In fact, even though appellant faced a statutorily prescribed minimum sentence of 50 years to life, defense counsel argued the rationale of *Graham*, *Caballero* and *Miller* compelled a lesser sentence, given appellant's age and mental deficiencies.

Defense counsel pointed out that, in the wake of those decisions, the Legislature enacted section 1170, subdivision (d)(2), which allows juvenile offenders who have been sentenced to LWOP to petition for recall and resentencing after they have served 15 years in prison. In light of that statute, defense counsel claimed it only made sense that appellant should be given the opportunity for release after 15 years, and therefore, the court should sentence him to 15 years to life in prison. Alternatively, defense counsel argued a total sentence of 25 years to life would be appropriate because it would give appellant a reasonable chance for parole if he showed maturity and rehabilitation while in prison.

The trial judge rejected defense counsel's arguments. He also turned down the prosecution's request for LWOP. As noted above, the judge was quite clear in his pronouncement that LWOP was unsuitable for appellant because his crimes did not reflect irreparable corruption. Relying primarily on appellant's age and limited cognitive functioning, the judge determined LWOP was simply too harsh a punishment for him. However, in the same breath, the judge sentenced appellant to 50 years to life in prison, representing 25 years to life on the murder count, plus a consecutive term of 25 years to life for the firearm enhancement. While recognizing appellant's sentence was very severe, the judge noted "at least he has [an] opportunity [for parole], whereas an LWOP sentence would completely ban that."

## DISCUSSION

Appellant argues his sentence is cruel and unusual under the Eighth Amendment. Even though he was not given LWOP, he contends his sentence effectively amounts to LWOP because he will not have any meaningful life expectancy left at the

5

time he becomes eligible for parole. And even though he committed a homicide offense, and is thus technically outside the scope of *Graham* and *Caballero*, he asserts the reasoning of those decisions compels reversal because, in sentencing him, the trial court did not consider how children differ from adults in terms of culpability and their reformation prospects and how those differences militate against the most severe sentences for juvenile offenders.

The Attorney General does not dispute that *Graham* and *Caballero* apply in the context of this case, even though it involves the commission of a homicide. (Accord, *In re Heard* (2014) 223 Cal.App.4th 115 (*Heard*); *People v. Thomas* (2012) 211 Cal.App.4th 987; *People v. Argeta* (2012) 210 Cal.App.4th 1478.) However, the state argues appellant's sentence is constitutional because the judge did consider his age as well as other mitigating circumstances in deciding his punishment, and because appellant will have a chance for parole before the time he is expected to die. The state also maintains appellant's sentence should be upheld in light of recently enacted legislation that affords him the opportunity for parole during the 25th year of his incarceration.

In the wake of *Graham*, *Caballero* and *Miller*, it is now clear that if a juvenile offender is found to be reformable, he cannot be sentenced to an LWOP or a de facto LWOP sentence. Rather, the sentencing judge must give the juvenile "a meaningful opportunity to demonstrate [his] rehabilitation and fitness to reenter society in the future." (*Caballero, supra*, 55 Cal.4th at p. 268.) As this court has recognized, "How *much* life expectancy must remain at the time of eligibility for parole . . . remains a matter for future judicial development." (*People v. Perez* (2013) 214 Cal.App.4th 49, 57.) However, judging from the cases thus far, "There is a bright line between LWOPs and long sentences *with* eligibility for parole *if* there is some meaningful life expectancy left when the offender becomes eligible for parole." (*Ibid.*)

Appellant was born on May 27, 1991. He committed the crimes at issue in this case on June 28, 2008, roughly one month after his 17th birthday, but he was not

arrested until June 1, 2009, at which time he was 18 years old. Thus, according to the terms of his 50-year-to-life sentence, he will not become eligible for parole until he is 68 years old.

Appellant contends it is unlikely he will actually be released from prison when he is 68 years old. That's because once he becomes eligible for parole at that age, the parole board has the authority to determine his actual release date in light of the circumstances surrounding his murder. (See Cal. Code Regs., tit. 15, §§ 2400 et. seq.; *In re Dannenberg* (2005) 34 Cal.4th 1061, 1078-1079, overruled on other grounds in *In re Lawrence* (2008) 44 Cal.4th 1181.) Based on his own assessment of those circumstances, appellant surmises he will probably not get to leave prison until he is somewhere between 71 and 73 years old. However, that's assuming the parole board finds him suitable for parole in the first place. (See *In re Dannenberg, supra,* 34 Cal.4th at p. 1080 [suitability finding "must precede any effort to set a parole release date"].) As the Attorney General rightly notes, that depends on how appellant comports himself during the first 50 years of his confinement. If he displays behavioral characteristics indicating he is a danger to the public, he may be lawfully confined until the day he dies. (See *Miller, supra*, 132 S.Ct. at p. 2469 [the state is not required to *guarantee* eventual freedom for a juvenile offender, only the *opportunity* to do so].)

The point is, no one really knows when — or if — appellant is actually going to be released from prison. Therefore, for purposes of deciding whether his sentence violates the Eighth Amendment, we will focus our attention on the minimum amount of time he was sentenced to serve in prison before becoming eligible for parole, which is 50 years. Appellant has failed to cite any authority that dictates a different approach.

Given that appellant will be 68 years old when he becomes eligible for parole, the question becomes whether he will have any meaningful life expectancy left at that time. Generally, "[t]he term 'life expectancy' means the normal life expectancy of a

7

healthy person of defendant's age and gender living in the United States." (*Caballero, supra*, 55 Cal.4th at p. 267, fn. 3.) By that standard, appellant is expected to live to the age of 72.[2] However, considering the health hazards associated with prison life, that number may actually be optimistic. (See *State v. Null* (Iowa 2013) 836 N.W.2d 41, 71 [recognizing long-term incarceration presents health and safety risks to prisoners that may tend to decrease their life expectancy].)

In any event, "we do not regard [appellant's] potential future release in his [] late sixties after a half century of incarceration sufficient to escape the rationales of *Graham* or *Miller*. The prospect of geriatric release, if one is to be afforded the opportunity for release at all, does not provide a 'meaningful opportunity' to demonstrate the 'maturity and rehabilitation' required to obtain release and reenter society as required by" those decisions. (*State v. Null, supra*, 836 N.W. at p. 71.)

To the contrary, appellant's sentence of 50 years to life in prison means the state has essentially made "an irrevocable judgment about [his] value and place in society." (*Graham, supra*, 560 U.S. at p. 74.) For all intents and purposes, it "'means denial of hope [for appellant]; it means that good behavior and character improvements are immaterial; it means that whatever the future might hold in store for [his] mind and spirit . . ., he will remain in prison for the rest of his days.' [Citation.]" (*Id*. at p. 70.) In short, appellant's sentence undermines the core teaching of *Graham*, *Caballero* and *Miller* that, except in the rarest of cases, juvenile offenders should not be written off by virtue of LWOP or de facto LWOP sentences.

This is not one of those rarest of cases. Because the trial court determined appellant was reformable, and thus undeserving of a straight LWOP sentence, it stands to reason that he should not have to spend 50 years in prison before he is eligible for parole.

---

2      We grant appellant's request to take judicial notice of government statistics showing as much. (Evid. Code, §§ 452, subd. (h), 459, subd. (a); *People v. Martin* (2013) 222 Cal.App.4th 98, 103, fn. 3; *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 535, fn. 7; http://www.cdc.gov/nchs/data/hus/2011/022.pdf (as of Feb. 24, 2014); see also http://www.census.gov/compendia/statab/2012/tables/12s0107.pdf (as of Feb. 24, 2014).

We agree with appellant that, on its face and standing alone, his punishment constitutes a de facto life sentence in violation of the Eighth Amendment.[3]

So, what is the proper remedy? As it turns out, seven months after appellant was sentenced, in September 2013, the Legislature enacted Senate Bill No. 260 (SB 260) in response to *Graham*, *Caballero* and *Miller*. With certain exceptions not applicable here, the law, which became effective on January 1, 2014, guarantees juvenile offenders the right to a "youth offender parole hearing." (§ 3051, subd. (a)(1).) The date of the parole hearing depends on the length of the juvenile's sentence. For juveniles such as appellant, who are sentenced to an indeterminate base term of 25 years to life, SB 260 entitles them to a parole hearing during the 25th year of their incarceration. (§ 3051, subd. (b)(3).)

The Attorney General argues SB 260 effectively cures any constitutional deficiencies in appellant's sentence because it ensures he will have a meaningful life expectancy left at the time he becomes eligible for parole. There is authority for that position. In fact, some courts have upheld juvenile sentences akin to the one imposed here in the belief that SB 260 ameliorates the problems of a sentence that, on its face, may run afoul of *Graham*, *Caballero* and *Miller*. (See, e.g., *People v. Franklin* (Feb. 28, 2014, A135607) __ Cal.App.4th __ [affirming judgment against juvenile who was sentenced to 50 years to life in prison]; *People v. Martin, supra,* 222 Cal.App.4th 98 [affirming judgment against juvenile who was sentenced to 45 years to life in prison].)[4]

_____

[3] We recognize the statutorily prescribed minimum sentence for appellant is 50 years to life. However, while the Legislature is entitled to great deference in terms of setting the punishment for criminal behavior, "'"the final judgment as to whether the punishment [the Legislature] decrees exceeds constitutional limits is a judicial function."'" (*People v. Dillon* (1983) 34 Cal.3d 441, 478.) Judges should not lightly depart from the sentencing laws put forth by the Legislature, but they have both the power and the responsibility to do so when, as here, "the Constitution forbids what the sentencing law compels." (*People v. Mora* (1995) 39 Cal.App.4th 607, 616; accord, *People v. Felix* (2003) 108 Cal.App.4th 994, 1000.)

[4] The California Supreme Court is currently considering this issue. (*In re Alatriste* (2013) 220 Cal.App.4th 1232 [denying habeas relief to juvenile offender who was sentenced to 50 years to life in prison for committing special circumstances murder with a firearm], review granted Feb. 19, 2014, S214652.)

But if we took that approach, appellant would still be left with a sentence that is facially unconstitutional. Moreover, as our colleagues in the first division of our appellate district have recognized, SB 260 may not be around by the time juvenile offenders such as appellant become eligible for parole under that law. (*Heard, supra*, 223 Cal.App.4th at p. 131.) Therefore, it is imperative for trial courts to apply the principles of *Graham*, *Caballero* and *Miller* at the time of sentencing. (*Id*. at pp. 130-131.) Indeed, those decisions make clear, "The *sentencing court* must consider all mitigating circumstances [] so that *it* can impose a time when the juvenile offender will be able to seek parole[.]" (*Caballero, supra*, 55 Cal.4th at pp. 268-269, italics added.) For fear of encouraging trial courts to forego this constitutional responsibility, we agree with *Heard* that SB 260 should be interpreted as a "safety net" as opposed to a cure-all for juvenile sentences that violate the Eighth Amendment. (*Heard, supra*, 223 Cal.App.4th at p. 130; cf. *In re Rainey* (Feb. 28, 2014, A138921) __ Cal.App.4th __ [applying *Heard*'s reasoning in a case where juvenile offender was sentenced to LWOP and thus eligible to petition for recall and resentencing after serving 15 years in prison pursuant to section 1170, subdivision (d)(2)].)

Here, however, the issue of appellant's juvenile status was fully litigated at his sentencing hearing. After entertaining arguments from both parties, the trial judge exercised his constitutional responsibility to consider the difference between juveniles and adults in sentencing appellant. While the trial judge did not expressly consider all of the social and psychological factors that make juveniles less culpable and more reformable than adults, it is clear the judge was familiar with *Graham*, *Caballero* and *Miller* and the principals they espouse. The record plainly shows those principals guided the judge's decision to forego sentencing appellant to a straight LWOP sentence.

While the trial judge was not convinced to depart from the statutorily prescribed sentence of 50 years to life, which, for the reasons explained above, constitutes an improper de facto life term, there is a simple way to remedy appellant's

10

sentence.  Because the judge determined appellant is reformable, and because SB affords appellant the opportunity for a parole hearing 25 years into his prison term, we will modify appellant's sentence to include a minimum parole eligibility date of 25 years. That way, even if SB 260 is repealed in the future, appellant will be guaranteed a parole hearing after 25 years by virtue of this judicial determination.

There can be no question that a sentence that guarantees appellant a parole hearing after 25 years, at the age of 43, is constitutional.  Given that appellant was convicted of special circumstances murder for killing a defenseless young man with a firearm, we believe his sentence, as amended, is eminently fair and fully comports with the teachings of *Graham*, *Caballero* and *Miller*.

## DISPOSITION

Appellant's sentence is modified to reflect he shall be entitled to a parole hearing after serving 25 years in prison.  The clerk of the trial court is directed to prepare a new abstract of judgment with this modification and to send a certified copy thereof to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


BEDSWORTH, J.


WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.


11