[No. D039818. Fourth Dist., Div. One. May 21, 2002.]

THE PEOPLE, Plaintiff and Appellant, v.
VALENTIN QUINTERO FELIX, Defendant and Respondent.

COUNSEL

Paul J. Pfingst and Bonnie M. Dumanis, District Attorneys, Charles E. Nickel, Anthony Lovett and James E. Atkins, Deputy District Attorneys, for Plaintiff and Appellant.

Laurel Nelson Smith, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**KREMER, P. J.**—A jury convicted Valentin Quintero Felix of carjacking (Pen. Code, § 215, subd. (a)), taking and driving a vehicle without the

owner's permission (Veh. Code, § 10851, subd. (a)), receiving a stolen vehicle (Pen. Code, § 496, subd. (d)), and giving false information to a peace officer (*id.*, § 148.9, subd. (a)). The jury also found Felix, in committing the carjacking, personally used a firearm within the meaning of Penal Code sections 12022.53, subdivision (b) and 12022.5, former subdivision (a)(2).[1]

The trial court sentenced Felix to nine years in prison. In doing so, the court imposed a four-year enhancement for firearm use under section 12022.5, former subdivision (a)(2), rather than the 10-year enhancement for firearm use under section 12022.53, subdivision (b), which the court found would be cruel or unusual punishment.

The People appeal, contending imposition of the section 12022.53, subdivision (b) enhancement is mandatory and the 10-year enhancement is not cruel or unusual. The judgment is affirmed in part and reversed in part with remand for resentencing.

FACTS

On the evening of October 22, 2001, Jan Dunlap was parked in a white Ford Taurus at Lindo Lakes Park in Lakeside. The Taurus was a loaner car, which Dunlap had been driving for approximately one month after her Chevrolet Camaro was damaged in an accident. Homeless, Dunlap had been living in her Camaro for seven months; after the accident she lived in the Taurus.

Dunlap arrived at the park around 5:30 or 6:00 p.m. and parked in the parking lot near the senior center. There were no other cars nearby. Dunlap was writing a letter when Felix walked in front of her car. Felix walked about 20 feet past her car, turned around and walked back to the driver's side of the Taurus. Felix asked Dunlap if she had a cigarette. As Dunlap reached for a pack on the seat next to her, she felt a gun in her left rib area.

Felix told Dunlap to get out of the car. Dunlap replied, "F--- you." Felix told Dunlap to give him the keys to the car. She gave him the same reply. Felix pushed hard on Dunlap's ribs with the gun and told her to move over. This time, Dunlap complied and slid over to the passenger side of the car. The keys were in the ignition; Felix started the car and drove away from the park. Felix asked Dunlap where the light switch was. She told him to figure it out himself.

After driving about a mile, Felix pulled over and told Dunlap to get down. Dunlap believed Felix was telling her to get out of the car. Because Dunlap's

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

wallet, which contained $300, was in the glove compartment, she made up a story to persuade Felix to let her take something out of the glove compartment. Dunlap told Felix she had epilepsy and needed to get medication out of the glove compartment. After convincing Felix that he would be in more trouble if something happened to her because she did not have her medicine, Felix stopped the car. Dunlap opened the glove compartment, grabbed her wallet, jumped out of the car and ran to get help. Felix drove off.

Dunlap had a bruise in the left rib area where Felix forcibly poked her with the gun. Dunlap was scared and startled during the carjacking and "knew I had to get out of there." Dunlap thought Felix might shoot her. Thinking about the incident afterward was very traumatic for Dunlap.

About 8:00 p.m. on November 1, Felix and his cousin Giovanni Felix (Giovanni) were traveling in the white Taurus on Interstate 8 when California Highway Patrol Officer Michael Bush pulled the vehicle over because the headlights and taillights were not on. Giovanni was driving and Felix was in the front passenger seat. The Taurus had Baja California license plates instead of the California license plates it had when it was stolen.

Giovanni falsely identified himself as "Andres Nunez Velmar." Bush learned through a computer check of the Taurus's vehicle identification number that the car was stolen and arrested Felix and Giovanni.

After the pair had been interviewed at the police station, an officer heard Giovanni ask Felix why he was saying Giovanni's name was "Andres"; Felix replied "That's what we had agreed on."

Testifying in his own defense, Felix denied the carjacking and firearm use. He admitted he was guilty of riding in the Taurus knowing it was stolen. Felix also admitted giving false information to the police officers. Felix testified that Giovanni did not know the car was stolen.

At the sentencing hearing, Felix moved to strike the section 12022.53, subdivision (b) allegation on the grounds it would be cruel or unusual punishment in this case given Felix's age and lack of a criminal record. The defense presented a psychological evaluation that, among other things, described Felix as an "individual of Low Average intellectual ability" whose "cognitive effectiveness is limited by the lack of flexibility in his adaptional approach." The evaluator opined that Felix "does not present . . . a high likelihood [of engaging] in aggressive-destructive behavior." Noting the seriousness and potential violent nature of the carjacking, the probation report stated: "The Instant Offense demonstrates the defendant's disregard of

property and person, as indicated by the serious nature of the Instant Offenses. Therefore, he is a present and constant threat to all citizens in the community . . . ."

In striking the section 12022.53, subdivision (b) allegation as cruel or unusual punishment in this case, the trial court noted that Felix was 21 years old, apparently did not have a criminal history, and had some psychological problems according to the psychologist evaluating him. Additionally, the court found that although Felix was armed, he apparently did not frighten the victim because she responded to his demands with an expletive. The court also relied on a then recently published case—since depublished—in which the Court of Appeal upheld the striking of a section 12022.53 allegation on the ground of cruel or unusual punishment.[2]

### DISCUSSION

Section 12022.53, subdivision (a) lists a number of violent felonies, including carjacking, and subdivision (b) specifies that, "[n]otwithstanding any other provision of law, any person who is convicted of [such] a felony . . . and who in the commission of that felony personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply." Moreover, this firearm enhancement may not be stricken pursuant to "[s]ection 1385 or any other provision of law." (*Id.*, subd. (h).)

 Nonetheless, a mandatory punishment provided by law may contravene constitutional principles and a court has the authority to intervene under such circumstances to prevent an unconstitutional punishment from being imposed. (*People v. Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697] (*Dillon*).) Even though the Legislature defines crimes and prescribes punishment for them, " ' "the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function." ' " (*Id.* at pp. 477-478.) For example, "[t]he punishment provided by law may . . . run afoul of the constitutional prohibition against cruel or unusual punishment in article I, section 17, of the California Constitution." (*People v. Mora* (1995) 39 Cal.App.4th 607, 615 [46 Cal.Rptr.2d 99] (*Mora*).) "[A] statutory punishment may violate the constitutional prohibition not only if it is inflicted by a cruel or unusual method, but also if it is grossly disproportionate to the offense for which it is imposed." (*Dillon*, at p. 478.) Because choosing the appropriate penalty is a legislative weighing function involving

[2]*People v. McClellan* (Dec. 18, 2001, B144957) review denied and opinion ordered nonpublished March 27, 2002, S103953.

the seriousness of the crime and policy factors, the courts should not intervene unless the prescribed punishment is out of proportion to the crime. (*Ibid.*)

■ In deciding whether the punishment is cruel or unusual, the court must determine whether the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) An examination of the nature of the offense and of the offender, " 'with particular regard to the degree of danger both present to society' " is particularly relevant in determining this issue. (*Dillon, supra,* 34 Cal.3d at p. 479.) In assessing the nature of the offense, a court should consider the circumstance of the particular offense such as the defendant's motive, the way the crime was committed, the extent of his involvement and the consequences of his acts. (*Ibid.*) In analyzing the nature of the offender, a court should consider his "age, prior criminality, personal characteristics, and state of mind." (*Ibid.*) "[A] punishment which is not disproportionate in the abstract is nevertheless constitutionally impermissible if it is disproportionate to the defendant's individual culpability." (*Id.* at p. 480.)

■ Reducing a sentence under *Dillon* "is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels." (*Mora, supra,* 39 Cal.App.4th at p. 616.) The reduction of a sentence because it is cruel or unusual " 'must be viewed as representing an exception rather than a general rule.' " (*People v. Smith* (1986) 187 Cal.App.3d 666, 683 [231 Cal.Rptr. 897], disapproved on other grounds in *People v. Bacigalupo* (1991) 1 Cal.4th 103, 126-127, fn. 4 [2 Cal.Rptr.2d 335, 820 P.2d 559].) "In such cases the punishment is reduced because the Constitution compels reduction, not because a trial court in its discretion believes the punishment too severe." (*Mora,* at p. 615.) Deciding that a punishment is cruel or unusual under *Dillon* presents a question of law subject to independent review; it is "not a discretionary decision to which the appellate court must defer." (*Mora,* at p. 615.)

■ On our independent review, we find the 10-year enhancement under section 12022.53, subdivision (b) was not cruel or unusual punishment in this case. Felix's motive was personal financial gain; he was unemployed and relying on friends to provide food and shelter. Felix armed himself, decided to commit a carjacking, secured a gun, and completed the carjacking by using the gun when he pressed it hard against Dunlap's ribs. He attempted to elude detection by changing the license plate, getting rid of the gun and denying involvement in the offense. Although Felix did not scare

Dunlap at first—as evidenced by her responding to him with an expletive—once Felix forcefully pressed the gun against her, Dunlap was frightened and worried he might shoot her. Thus, Felix used the gun in a threatening manner and convinced Dunlap he was willing to use it to compel her to comply with his demand for the car. Although Felix's crime was not as violent as some armed carjackings, section 12022.53, subdivision (b) does not require extreme violence.[3] This statutory provision punishes the perpetrator of one of the specified crimes more severely for introducing a firearm into a situation which, by the nature of the crime, is already dangerous and increases the chances of violence and bodily injury. We conclude nothing in the nature of the offense or how it was committed allows striking the mandatory enhancement as cruel or unusual.

We also are not persuaded the punishment is grossly disproportionate to Felix's individual culpability based on his personal characteristics. Notwithstanding the opinion of the psychologist who evaluated him, Felix was not passive in carjacking the Taurus. Felix obtained a gun, approached a woman twice his age, pushed the gun into her body with enough force to bruise her—thereby implicitly threatening her life after she initially did not take him seriously—and completed the crime. Felix was not passive in attempting to cover up the crime. Felix changed the license plate on the car and convinced his cousin to join him in giving false information to the police. Felix was the leader, not the follower, in this enterprise; it was Giovanni who took orders from Felix. Thus, Felix's conduct was premeditated, not spontaneous. (See *People v. Almodovar* (1987) 190 Cal.App.3d 732, 748 [235 Cal.Rptr. 616].) Moreover, Felix displayed no remorse for his crime. Although Felix had no documented criminal history, he twice entered the United States illegally. The lack of a criminal record is not determinative in a cruel or unusual punishment analysis. (*People v. Martinez* (1999) 76 Cal.App.4th 489, 497 [90 Cal.Rptr.2d 517]; *People v. Gonzales* (2001) 87 Cal.App.4th 1, 17 [104 Cal.Rptr.2d 247].) Although Felix was a few months shy of adulthood when he committed the crime, by the time of sentencing, his 21st birthday had passed. We do not find Felix comparable to the unusually immature 17-year-old defendant in *Dillon* who panicked and shot and killed a man guarding a field from which the defendant and his companions had planned to steal marijuana.[4] (*Dillon, supra,* 34 Cal.3d at pp. 482, 483, 486, 488.)

---

[3]Moreover, the statute provides for a mandatory 20-year enhancement if Felix had fired the gun. (§ 12022.53, subd. (c).) If Felix had fired the gun and caused great bodily injury, a 25-year-to-life enhancement would be mandatory under the statute. (*Id.,* subd. (d).)

[4]In *Dillon, supra,* 34 Cal.3d at page 489, the Supreme Court reduced a first degree murder conviction to second degree murder, holding that "in the circumstances of this case the punishment of this defendant by sentence of life imprisonment as a first degree murderer violates article I, section 17, of the Constitution. Nevertheless, because he intentionally killed

The trial court erred in finding the firearm use enhancement pursuant to section 12022.53, subdivision (b) unconstitutional as applied to Felix, and in striking the enhancement, thereby failing to impose the term prescribed by law. Remand for resentencing is required.

### DISPOSITION

The sentence is reversed, and the case is remanded for resentencing. The trial court shall amend the abstract of judgment and forward a copy of the amended abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

Huffman, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied June 9, 2003, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied August 13, 2003.

---

the victim without legally adequate provocation, defendant may and ought to be punished as a second degree murderer." The trial court and the jury had manifested their beliefs that statutory punishment under the felony murder rule was excessive in relation to the defendant's culpability. (*Dillon*, at pp. 484-485.) The trial judge indicated that the defendant was " 'less than 17 in many respects, emotionally, intellectually, and in a lot of other ways.' " (*Id.* at p. 486.) The trial judge also indicated it did not consider the defendant to be dangerous in terms of the risk of future harm and given the defendant's lack of a criminal record, the killing was " 'out of context with [his] past.' " (*Ibid.*)