Filed 6/25/26  P. v. Castaneda CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064765 |
| v. | (Super. Ct. No. 22CF0308) |
| MARCOS ALFREDO CASTANEDA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge. Reversed and remanded with directions.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

\*           \*           \*

A jury convicted defendant Marcos Alfredo Castaneda of six counts of engaging in a lewd or lascivious act with a minor under the age of 14 (Pen. Code, § 288, subd. (a)).[1] The jury also found true defendant committed these offenses against more than one victim (§§ 667.61, subds. (j)(2), (e)(4)). The jury further found true aggravating factors that the victims were particularly vulnerable and that defendant took advantage of a position of trust.[2] The court sentenced defendant to an aggregate term of 25 years to life in state prison.

Defendant contends the court misunderstood the scope of its sentencing authority and did not realize it could impose a different sentence. He alternatively argues his life sentence constitutes cruel and unusual punishment.

For the reasons *post*, it is not clear if the court understood the scope of its sentencing authority. The record is ambiguous as to whether the court found the sentence constitutionally permissible or believed it was obligated to impose the sentence regardless of any constitutional concerns. We accordingly reverse the judgment and remand for further proceedings consistent with this opinion.

STATEMENT OF FACTS

In 2017, defendant and his wife lived in an apartment next to the victims, A. Doe and V. Doe. The victims were eight-year-old twin sisters, and their mother operated a business with defendant's wife. The victims' mother would take the victims to defendant's apartment so she and defendant's wife

---

[1] All further statutory references are to the Penal Code.

[2] The jury found defendant not guilty of two counts of engaging in a lewd or lascivious act with a minor under the age of 14 (§ 288, subd. (a)).

could work. While at defendant's apartment, the victims usually played with defendant's grandson.

A. Doe testified defendant offered cookies to her and V. Doe to get them to follow him to the bathroom. Once inside the bathroom, defendant would sit down on the toilet, grab the victims by the waist, and place them on his lap. A. Doe testified defendant would then kiss her for a couple minutes while touching her face. She felt defendant's tongue inside her mouth and his hand rubbing her thigh. When asked how often defendant kissed her, A. Doe indicated it was more than once. When later asked how often defendant kissed her in the bathroom, A. Doe testified it was one time. She also testified defendant kissed V. Doe on the mouth and that she and V. Doe did not sit on defendant's lap at the same time. Finally, she noted her mother was in the kitchen while they were in the bathroom.

V. Doe similarly testified defendant would tell her and A. Doe that he had cookies in his closet. After they went to the closet to get the cookies, defendant would grab their hands and take them to the bathroom. Defendant would close the bathroom door, sit on the toilet, grab them by the waist, place them on his lap, and kiss them both. V. Doe did not remember if defendant used his tongue but believed the kissing felt dry. She testified defendant would "keep, like, touching us by the waist and kissing us." She also recalled defendant's hand resting on her thighs. When asked how often defendant took her to the bathroom to kiss her, V. Doe testified it happened multiple times during that summer. V. Doe further recalled defendant kissed her while he sat on his bed.

A few years later in 2022, V. Doe told her mother what defendant had done. Their mother confronted defendant who told her that she had given him permission to "make love to them."

When speaking to the police, defendant initially denied any inappropriate contact with the victims. He reported the victims' mother owed money to his wife and was intentionally causing trouble for him and his family. But he later admitted he and the victims kissed on three occasions in the bathroom. He claimed the victims kissed him over his objections. He further reported the victims would go into his room, remove their underwear, and ask him to make love to them. He reiterated that their mother told him he could have sex with the victims if he discharged her debt to his wife.

## DISCUSSION

Defendant asserts the court misunderstood the scope of its authority to not impose a life sentence that amounted to cruel and unusual punishment. He accordingly requests we remand the matter so the court may exercise its sentencing discretion at a new sentencing hearing. Defendant alternatively argues his life sentence is disproportionate to his crimes and is therefore cruel and unusual under the state and federal constitutions.

As discussed *post*, it is not clear if the court understood the scope of its sentencing authority. We therefore reverse and remand for further proceedings.

## I.

### RELEVANT BACKGROUND

At the sentencing hearing, defendant argued a life sentence under section 667.61 (the "One Strike" law) would constitute cruel and unusual punishment given the nature of his offenses. He also requested the court exercise its discretion under section 1385 to strike the enhancement triggering his life sentence.

After hearing the parties' arguments, the court commented: "I don't find that [section 667.61] is cruel and unusual, and so I don't think I

4

have any choice but to give the sentence that I'm about to give." The court then agreed with defendant's counsel that the Legislature did not contemplate specific factual scenarios when it enacted the One Strike law. But the court emphasized the Legislature enacted a statute mandating certain punishment for sexual offenses involving multiple victims under the age of 14 years old. The court noted: "[W]e do have an impact on multiple victims under that age, both by incident and by the results and the demeanor that we have seen, both in testimony at trial and even today as the victim impact statements were given. So I don't think it is cruel and unusual . . . when you have multiple victims."

The court then stated: "If I had discretion . . . I . . . wouldn't have imposed the sentence. [¶] I would have intended, if I was given the free reign discretion by statute, which would have been 12 years. I would have gone to a one third the mid after giving a middle term sentence on a single count which would have gotten me to 12 years." The court added that the prosecutor previously "gave a non-life sentence offer to a prior attorney" before trial. The court "wish[ed]" defendant's counsel represented him at that time "because [the court believed] the course would have been different."

The court ultimately concluded it did not believe section 667.61 was "a cruel and unusual statute because there is multiple victims under the age of 14." The court accordingly sentenced defendant to an aggregate term of 25 years to life in state prison.

II.

APPLICABLE LAW

The One Strike law mandates a sentence of 15 or 25 years to life for certain designated sexual offenses committed under specified aggravating circumstances. As relevant here, a lewd or lascivious act (§ 288, subd. (a)) is a

5

qualifying sexual offense. (§ 667.61, subd. (c)(8).) The default sentence "is 15 years to life if the jury has found the crime was committed under one of the circumstances listed in subdivision (e) of the One Strike law, among which is the multiple victim circumstance. (§ 667.61, subds. (b), (e)(4).)" (*In re Vaquera* (2024) 15 Cal.5th 706, 713.) But if multiple victims are under the age of 14 years old, the sentence is 25 years to life. (§ 667.61, subd. (j)(2).) A court "shall not strike any allegation, admission, or finding of any of the circumstances specified in subdivision . . . (e) for any person who is subject to punishment under" the One Strike law. (§ 667.61, subd. (g).)

The One Strike law was enacted "'to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction . . . where the nature or method of the sex offense "place[d] the victim in a position of *elevated vulnerability*."'" (*People v. Williams* (2024) 17 Cal.5th 99, 117–118.) The Legislature "target" those who "prey[] on women and children, cannot be cured of . . . aberrant impulses, and must be separated from society to prevent reoffense." (*People v. Wutzke* (2002) 28 Cal.4th 923, 929–930.) "Almost all of the enumerated crimes involve the use of force or fear." (*Id.* at p. 930.) Defendants convicted of sexual offenses against multiple victims 'are [also] among the most dangerous' from a legislative standpoint." (*Id.* at pp. 930–931.)

Where, as here, a defendant contends a sentence constitutes cruel and unusual punishment, "[t]he judicial inquiry commences with great deference to the Legislature." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.) "Yet legislative authority remains ultimately circumscribed by the constitutional provision forbidding the infliction of cruel or unusual punishment." (*In re Lynch* (1972) 8 Cal.3d 410, 414, superseded by statute on another ground as stated in *In re Palmer* (2021) 10 Cal.5th 959.) As pertinent

here, article I, section 17, of the California Constitution proscribes "[c]ruel or unusual punishment." A prison sentence violates this proscription "if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.)

Courts use a three-part test to determine if a particular sentence is disproportionate to the offense for which it is imposed. (*People v. Christensen, supra*, 229 Cal.App.4th at p. 806.) First, courts consider "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*In re Lynch, supra*, 8 Cal.3d at p. 425.) Second, courts compare the challenged punishment with punishments imposed for more serious crimes in the same jurisdiction. (*Id.* at p. 426.) Finally, courts compare the challenged punishment with punishments imposed for the same offense in other jurisdictions. (*Id.* at p. 427.)

### III.

### THE COURT'S SENTENCING AUTHORITY

As noted *ante*, "a mandatory punishment provided by law may contravene constitutional principles and a court has the authority to intervene under such circumstances to prevent an unconstitutional punishment from being imposed." (*People v. Felix* (2003) 108 Cal.App.4th 994, 999.)

Here, it is not clear if the trial court was aware of its authority to not impose a life sentence under the One Strike law assuming it found the sentence amounted to cruel or unusual punishment. The court specifically stated it would not have imposed the mandated sentence if it had discretion. The court noted the prosecutor previously offered a non-life sentence, and the court lamented that defendant's counsel did not represent him during

7

settlement discussions because the court believed a life sentence could have been avoided. The court also suggested the Legislature likely did not contemplate the specific factual scenario in the instant case. But the court concluded: "I don't find that *that statute* is cruel and unusual, and so I don't think I have any choice but to give the sentence." (Italics added.) The court later stated: "*I don't believe it is a cruel and unusual statute* because there is multiple victims under the age of 14." (Italics added.) Given the court's indication that it viewed a different sentence as more appropriate, it is not clear if the court merely found *the statute* was not cruel and unusual on its face or if it found the *administration of the sentence as applied to defendant* was not cruel and unusual punishment. Under these circumstances, remand is appropriate.

Relying on *People v. Hamlin* (2009) 170 Cal.App.4th 1412 (*Hamlin*) and *People v. Baker* (2018) 20 Cal.App.5th 711 (*Baker*), the People argue remand is unnecessary because this court can determine de novo whether defendant's sentence constitutes cruel or unusual punishment. These cases do not alter our conclusion. We agree the issue of whether a sentence constitutes cruel or unusual punishment is a question of law for the appellate court. But *Hamlin* and *Baker* do not involve uncertainty regarding the trial court's understanding of its authority. Here, the record does not clearly reveal if the court recognized it had authority to intervene if it believed the punishment was unconstitutional.

We accordingly remand the matter for the trial court to clarify whether the mandated statutory sentence as applied to defendant constitutes cruel or unusual punishment. If the court finds the mandated statutory sentence is constitutional, it may impose the sentence. If the court finds the mandated statutory sentence is unconstitutional, it may exercise its

8

authority to impose a different sentence. In doing so, we express no opinion as to whether the mandated statutory sentence is cruel or unusual punishment as applied to defendant. The trial court is free to clarify its holding on remand.

## DISPOSITION

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

SANCHEZ, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.