Filed 5/26/15  P. v. Nelson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C075704 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F04523) |
| v. | |
| TRAURE ZURI NELSON, | |
| Defendant and Appellant. | |

A jury convicted defendant Traure Zuri Nelson of carjacking (Pen. Code, § 215, subd. (a))[1] and sustained an enhancement for personally using a firearm (§ 12022.53, subd. (b)).  The trial court denied defendant's motion to strike the enhancement as cruel and/or unusual punishment and sentenced him to 13 years in state prison.

On appeal, defendant contends the trial court misunderstood the scope of its authority to strike the enhancement as cruel and unusual punishment, and imposition of

---

[1] Undesignated statutory references are to the Penal Code.

the enhancement violates the state prohibition against cruel or unusual punishment.  We affirm.

BACKGROUND

*The Crime*

On July 7, 2013, defendant was the registered owner of a 2001 Lincoln Navigator sport utility vehicle (SUV).  As of that date, Lobel Financial, the SUV's legal owner, had sent multiple payment past due notices to defendant.  It assigned repossession of the vehicle to Hook and Book Recovery.

Around 8:00 p.m., Jeremy Monks, a repossession agent for Hook and Book Recovery, went to defendant's home to repossess the Navigator.  Monks's cousin Brandon Meyer went along as a lookout and assistant.  The Navigator was in the driveway and Monks picked it up with his tow truck.  As Monks and Meyer started to put nylon ratchet straps on the rear wheels, defendant jumped over a fence and approached them.

Defendant was agitated and "freaked out" and asked "what the hell was going on." Monks said they were repossessing his Navigator and told defendant he could retrieve his belongings from the vehicle if he gave up the keys.  Defendant said he needed some things out of the Navigator and questioned whether Monks was a legitimate repossession agent.

Monks got the repossession paperwork from his truck and showed it to defendant, who snatched it from him.[2]  Defendant said he paid the bill; Monks and Meyer replied they had to take the Navigator, but offered to give defendant a card that would allow him to pay off the debt and regain the vehicle.

_____

[2]  Meyer testified that he had the paperwork and defendant took it from him.

2

Defendant's behavior then "went south." He told Monks and Meyer that they were not going to take his car. He "started getting kind of violent," started swearing, and threatened to shoot Monks and Meyer. Defendant's wife or girlfriend came out of the house and stood on the patio. Defendant told her to "get the gun," and that he would kill Monks and Meyer before they took the Navigator. Monks and Meyer tried to calm defendant down, but he did not seem to care and kept telling the woman to "grab the gun."

Defendant went into the house to get his keys. When defendant returned, Monks asked for the keys. Defendant pulled a semiautomatic pistol out of his pocket and said that they were not going to take his vehicle. Monks undid the straps, lowered the Navigator, and quickly left with Meyer. He called his supervisor, who told him to call the police.

Defendant made a full monthly payment on the Navigator on July 10, 2013. Lobel Financial accepted payment and canceled the repossession.

Defendant was stopped while driving the Navigator and arrested on July 18, 2013. The Hook and Book recovery paperwork and a receipt from Lobel Financial for the July 10, 2013, payment were inside the vehicle.

*Motion to Strike the Enhancement*

Defendant filed a motion to strike the section 12022.53 gun enhancement as a violation of the state and federal prohibitions against cruel and/or unusual punishment. He argued that recent changes in other laws reducing the punishments for various crimes created a new context for considering his claim. He also argued that the facts of his case were "substantially less egregious than those of the 'standard' carjacking." The motion pointed out that the Navigator was very important to defendant, who needed it to transport his son, who had a leg amputated due to cancer, to medical appointments. Defendant claimed his minimal criminal record, a 32 year old with no felony convictions, further supported a finding that imposing the enhancement was a disproportionate

3

punishment. He additionally noted that incarceration will gravely affect his girlfriend and the four children he supports as the sole breadwinner. Finally, the manner in which defendant conducted his life, avoiding gangs while growing up in the Oak Park neighborhood, finishing high school and attending two years of college, and owning and operating his own business, shows that the incident leading to his conviction was out of character for his personality.

At the hearing on the motion, defense counsel reiterated the contentions regarding changes to the law, the mitigated facts of the crime, and defendant's lack of a significant record.[3] The trial court told counsel "that your argument really goes to the nature of the Penal Code section 215 violation, which is -- this is not your typical, if you will, carjacking." Noting that the gun enhancement applied to "a whole plethora of offenses-- and it doesn't really matter whether it's carjacking or robbery or some similar offense," the court asked what about the nature of the offense "mitigates against applying the [section] 12022.53[, subdivision] (b) uniformly?" Counsel replied that this was not a standard carjacking and the firearm here was used in a "de minimis way." The court replied this was the type of situation section 12022.53 was intended to prevent, a person in an emotionally charged situation using a firearm to commit an offense.

The court asked the prosecutor for his opinion on the facts of defendant's crime. The prosecutor argued that while this was not a standard carjacking, that did not matter to the victims. Monks quit his job after the incident and Meyer no longer worked in repossession. Therefore, the fact that defendant had an ownership interest in the vehicle was irrelevant. Also, the recent changes to the law reducing punishment were enacted

---

[3] When he was 12, defendant had a sustained delinquency petition for misdemeanor vandalism. (Former § 594, subd. (b)(4).) As an adult, he has misdemeanor convictions for false imprisonment (§ 236) and resisting an officer (§ 148, subd. (a)(1)).

through legislation or the initiative process rather than judicially. The defense replied to this last point by referring to recent decisions reducing punishment in certain situations.

The trial court then stated: "Well, I have considered the authorities that have been cited. I've done some research on my own. I really don't believe the lack of any significant criminal record provides any basis for modifying the sentence to avoid an imposition of the sanction under [section] 12022.53[, subdivision] (b). [¶] I think the only thing that's really pertinent here to that consideration, based on the authorities that I've referred to, is the nature of the offense itself." Continuing, the court asked the prosecutor whether justice would not be served if it granted defendant's request and imposed a five-year enhancement under section 12022.5 rather than the 10-year section 12022.53 enhancement.

The prosecutor argued there was nothing mitigating about defendant's offense. Asked for additional comment, defense counsel said if someone had come up to defendant's home, knocked on the door, and said he had slept with defendant's girlfriend, defendant could receive a lesser sentence for shooting that man than what he would today if the court did not grant the motion.

The trial court then denied defendant's motion, finding "the conduct involving the use of a firearm in this case is exactly what was intended to be proscribed by the effects of that statute and I do not see any good cause based upon the overall conduct in this case to depart from imposing the penalties under [section] 12022.53[, subdivision] (b)."

DISCUSSION

I

Defendant contends the trial court did not understand its authority to strike his punishment as cruel or unusual under the California Constitution. He claims the court's statements at the hearing on his motion show a belief that it could not consider factors like defendant's lack of a prior record, and that the court limited its consideration to the

5

nature of his current offense. Defendant asks us to reverse the denial of his motion to strike the enhancement and remand for a new hearing.

Defendant's contention is based on two statements from the trial court, the trial court's statement: "Well, I have considered the authorities that have been cited. I've done research on my own. I really don't believe the lack of any significant criminal record provides any basis for modifying the sentence to avoid an imposition of the sanction under [section] 12022.53[, subdivision] (b). [¶] I think the only thing that's really pertinent here to that consideration, based on the authorities that I've referred to, is the nature of the offense itself," and its statement denying his motion: "the conduct involving the use of a firearm in this case is exactly what was intended to be proscribed by the effects of that statute and I do not see any good cause based upon the overall conduct in this case to depart from imposing the penalties under [section] 12022.53[, subdivision] (b)." Defendant claims these statements show the trial court thought it could not consider his lack of a significant prior record and denied the motion based solely on the nature of the current offense.

We disagree. The judge obviously considered the facts of the case in considering whether to impose the enhancements.

The nature of the current offense is not the only relevant consideration to determining whether a punishment is unconstitutionally cruel or unusual. Other factors to be considered include the nature of the offense and the offender, the penalty imposed for more serious crimes, and the penalty imposed for the same offense in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 425-427 (*Lynch*).) If the trial court thought it could not consider valid factors like defendant's prior record, then a remand for resentencing would be appropriate.

In any event defendant did not raise an objection to the trial court on this ground, which forfeits the contention on appeal. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247-1248.) Defendant claims trial counsel's failure to raise an objection constitutes

6

ineffective assistance and asks us to ignore the forfeiture and consider on the merits the alleged failure to consider his lack of significant criminal record.

"To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' [Citation.]" (*People v. Hart* (1999) 20 Cal.4th 546, 623.) As we shall discuss in part II, *post*, the 10-year enhancement did not violate the proscription against cruel or unusual punishment. Since the question whether a punishment is cruel or unusual is reviewed de novo as a question of law (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358), defendant could not prevail on his motion if the trial court did in fact consider all relevant factors. Therefore, he was not prejudiced by any alleged refusal to consider his lack of a serious prior criminal record. Since trial counsel was not ineffective, we decline to consider the forfeited contention.

II

Under section 12022.53, subdivision (b) a defendant who personally uses a firearm when committing one of a certain number of specific felonies, is subject to a 10-year enhancement. Carjacking is one of the felonies subject to this enhancement. (§ 12022.53, subd. (a)(5).) Defendant contends that imposing this enhancement on him is so disproportionate as to violate the California Constitution's proscription against cruel or unusual punishment. We disagree.

The California Constitution prohibits "Cruel or unusual punishment." (Cal. Const., art. I, § 17.) We construe this provision separately from its counterpart in the federal Constitution. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 355.)

"[I]n California a punishment may violate [California Constitution, article I, section 17] if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch, supra*, 8 Cal.3d at p. 424, fn. omitted.) To assess disproportionality, we (1) examine the nature of the offense and the offender,

7

(2) compare the sentence with punishments for more serious offenses in the same jurisdiction, and (3) compare the sentence with punishments for the same offense in other jurisdictions. (*Id*. at pp. 425-427.)

"In examining 'the nature of the offense and the offender,' we must consider not only the offense as defined by the Legislature but also 'the facts of the crime in question' (including its motive, its manner of commission, the extent of the defendant's involvement, and the consequences of his acts); we must also consider the defendant's individual culpability in light of his age, prior criminality, personal characteristics, and state of mind. [Citations.]" (*People v. Crooks* (1997) 55 Cal.App.4th 797, 806.)

Defendant relies on only the first technique listed in *Lynch*, the nature of the offense and offender. He claims his offense is not a standard carjacking, as the crime was not planned, and was not "motivated by greed, criminality, or gang-related conduct." According to defendant, this case is unlike the standard carjacking, "in which a perpetrator arms himself and goes out to take someone else's vehicle." He further asserts that he thought he had paid his bill before the attempted repossession, and that losing the Navigator would have devastating consequences on his family, as it was used to take his cancer-stricken son to medical appointments. Defendant also argues that the manner in which he used the gun further supports a finding of disproportionality, as it was not used as a first resort, he did not fire the weapon or point it directly at the victims, and the victims were not particularly vulnerable. In light of defendant's personal characteristics, his education, employment history, and lack of a personal record, defendant concludes that imposing the enhancement was grossly disproportionate and therefore violated the California Constitution.

Defendant may be correct that this is not a standard carjacking because it was committed against repossession agents rather than the owner and driver of a motor vehicle. It was nonetheless a violent felony in which defendant's use of a firearm was integral to completing the crime. Defendant does not contend that Monks and Meyer did

8

not have a right to repossess his vehicle.**4** His attempts to stop them from repossessing his Navigator were unsuccessful until he committed the enhancement by personally using a firearm. Defendant did not use the gun on mere impulse; he twice asked his girlfriend to retrieve it. He also threatened to shoot Monks and Meyer before he got the weapon.

We agree with the trial court that defendant's actions are those that the Legislature sought to deter when it enacted the enhancement in question. In addition to allowing defendant to complete a carjacking, his personal use of a firearm imposed substantial harm to his victims. Monks quit his job after his encounter with defendant. He did so because he did not want to put himself in "that situation" again. Meyer also refused to work in repossession after defendant's carjacking. Like Monks, he did not want to put himself "in that situation again." Notwithstanding his arguments to the contrary, defendant's use of a firearm here was not mitigated but well within the norm of culpability contemplated in the section 12022.53, subdivision (b) enhancement.

Defendant's personal characteristics do not support a different result. He was 32 years old at the time of the crime, so his culpability is not mitigated by youth. Although his criminal record is not significant, "[t]he lack of a criminal record is not determinative in a cruel or unusual punishment analysis. [Citations.]" (*People v. Felix* (2003) 108 Cal.App.4th 994, 1001.) While defendant supported himself and his family, this cannot insulate him from the gun-use enhancement.

It is not grossly disproportionate to impose a 10-year enhancement on a defendant for personally using a firearm after threatening to shoot his victims, and where his doing

---

**4** Section 215, subdivision (a) states: " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." If the agents did not have a right to repossess the vehicle, then defendant would not be guilty of carjacking.

so places them in such fear that they quit working in the car repossession field.  The trial court did not err when it denied his motion to strike the enhancement.

DISPOSITION

The judgment is affirmed.


                                        BLEASE                , J.


We concur:


     RAYE               , P. J.


     ROBIE              , J.