Filed 5/30/24  P. v. McNeill CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACK B. McNEILL,<br><br>    Defendant and Appellant. | B328153<br><br>(Los Angeles County<br> Super. Ct. No. A039828) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge.  Affirmed.

William L. Heyman, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

In 1992, the jury found Jack B. McNeill guilty of first degree murder (Pen. Code[1], § 187), burglary (§ 459), and robbery (§ 211). The jury found true the special circumstances that McNeill committed the murder while he was engaged in the commission of a robbery and a burglary (§ 190.2, subd. (a)(17)(i) and (vii)), and the allegation that the victim was over the age of 60 years old. (§ 1203.09, subd. (f).) McNeill was 18 years old at the time he committed the offenses. He was sentenced to life without parole (LWOP).

In 2022, McNeill moved for a hearing to preserve evidence for use at a future youth offender parole hearing pursuant to section 1203.1. (*People v. Franklin* (2016) 63 Cal.4th 261; *In re Cook* (2019) 7 Cal.5th 439.) The trial court denied the motion on the ground that youth offender parole hearings are not available for people, like McNeill, serving LWOP sentences for an offense committed after the offender attained 18 years of age. (§ 3051, subd. (h).)

On appeal, McNeill contends that excluding from youth offender parole consideration defendants like himself, who were between the ages of 18 and 26 years old at the time of the offenses for which they were sentenced to LWOP, violates the constitutional right to equal protection of the laws and the prohibition on cruel and unusual punishment.

We affirm the trial court's order.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTS[2]

"The decedent, Thelma Sterling, lived at 5239 Arbor Road in Long Beach. In August 1986, when defendant, who was a friend of her grandson, had problems at home, the decedent allowed him to move into her home. Defendant moved out of the decedent's home in February 1987. On Friday, March 18, 1988, the decedent went shopping with her friend Dorothy Condit (Condit). The decedent bought toilet paper. Condit took the decedent home and then went to her own residence.

"The following Monday, March 21, 1988, Condit went to the decedent's residence. Condit saw the toilet paper on the floor in the shopping bag where she had seen it the preceding Friday. Inside the residence, Condit saw the decedent on the bedroom floor. The decedent's head was covered with her pajamas which had been pulled over her head. The pajamas were saturated with a large amount of blood. The decedent had died from multiple blunt force injuries to her head, back of her neck, chest, knees, and hands. Her spine and ribs had been broken and there were several bruises and cuts on her body.

"Condit also observed that the residence had been ransacked. Drawers had been opened and items were dumped onto the floor from the inside of the drawers. Condit knew that the decedent kept money in a file cabinet in the house. On March 18, 1988, the last time they were together, the decedent had $680 in a file box in the file cabinet in her bedroom. The file cabinet had been broken open. Other portions of the residence looked as though they had been searched.

---

[2] The facts are taken from the prior appellate opinion in *People v. McNeill* (Jun. 15, 1992, B040728 [nonpub. opn.] ).

"Defendant's left thumb print was found on the inside frame of a broken dining room window in the front of the house. A portion of defendant's palm print was found on the outside of the northwest bedroom door frame, near where the body was found. A pane near the locking thumb latch of the window on the north side of the front porch had been broken. The thumb portion had been bent but did not open because it had been sealed shut with paint. A bathroom window at the rear of the house had been opened and the screen left on the grass. The wood frame of the window had indentations or pry marks in it. The marks on both of the windows had been made in an effort to gain entry into the house.

"Defendant was arrested in Arizona on April 1, 1988, where he was interviewed by Detective Bill Robbins of the Yavapai County Sheriff's Office. During the trial, People's exhibit 19, a tape recording of two interviews . . . was played for the jury. In the first interview, defendant stated that he knew that a murder had been committed on the weekend he was in California; denied involvement with any of the charged crimes; but admitted that he had previously stolen $1,500 from the decedent approximately a year before the homicide. Defendant claimed he had arranged with his father to pay the money back to the decedent. When he returned to Arizona after the homicide, he told some people that he had gotten into trouble because he thought that he would be a suspect because of the previous theft. He knew that the decedent kept her money in a file cabinet in her bedroom.

"During the second interview, defendant admitted that he committed the burglary, but denied he murdered the decedent. Defendant stated that on the night in question, his friend, Chris Manriquez (Manriquez) dropped him off at defendant's mother's

4

house.  Defendant decided that he would break into the decedent's house to take money.  He knew that this was 'an easy way to get money' because defendant had taken money from her on another occasion.  Defendant considered it safe to break into the house and take the money out of the file cabinet in the bedroom because the decedent was deaf.  At about 3:00 a.m., he tried to break into a window by the front door and when the latch would not turn, he entered the house through the bathroom window and went into the decedent's bedroom to obtain the money from the file cabinet.  The decedent was asleep.  Defendant pulled the handle off of a drawer to the file cabinet and took about $400 in cash.  Defendant claimed that when he left she was still sleeping.  Defendant also stated that he had not been drinking nor had he taken drugs on the night that he went into the house."

## DISCUSSION

"California's youth offender parole statute offers opportunities for early release to certain persons who are incarcerated for crimes they committed at a young age. (§§ 3051, 4801.)  When it was first enacted in 2013, the statute applied only to individuals who committed their crimes before the age of 18; the purpose of the statute was to align California law with then-recent court decisions identifying Eighth Amendment limitations on life without parole sentences for juvenile offenders.  In more recent years, however, the Legislature has expanded the statute to include certain young adult offenders as well.  Under the current version of the statute, most persons incarcerated for a crime committed between ages 18 and 25 are entitled to a parole

5

hearing during the 15th, 20th, or 25th year of their incarceration. (§ 3051, subd. (b).)  But not all youthful offenders are eligible for parole hearings.  The statute excludes, among others, offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18.  (*Id*., subd. (h).)” (*People v. Hardin* (2024) 15 Cal.5th 834, 838–839 (*Hardin*).)

### *Due Process*

McNeill first contends, as he did in the trial court, that section 3051 violates federal and state constitutional guaranties of equal protection by excluding from eligibility for youth offender parole hearings persons serving LWOP sentences for crimes committed when they were between 18 and 25 years of age.  The issue is one that had divided the Courts of Appeal, but after briefing in this case was complete, the California Supreme Court resolved the conflict by holding that section 3051 does not violate equal protection.  (*Hardin, supra*, 15 Cal.5th at p. 839 [“Hardin has not demonstrated that the Legislature acted irrationally in declining to grant the possibility of parole to young adult offenders convicted of special circumstance murder, even as it has granted youth offender hearings to young adults convicted of other offenses”].)  Although the court left open the possibility of “other challenges to the distinctions drawn by the special circumstances statute based on a more robust record or a more focused as-applied inquiry” (*id*. at p. 862), here McNeill has not made an as-applied challenge based on the special circumstances found true by the jury against him.  *Hardin* is controlling, and McNeill’s contention necessarily fails.

6

### *Cruel and Unusual Punishment*

McNeill next contends that the amendments to section 3051 that provide youth offender parole hearings for persons serving non-LWOP sentences who committed their controlling offenses between the ages of 18 and 25 years old rendered his LWOP sentence cruel and unusual punishment under article I, section 17 of the California Constitution. We reject this contention as well.

"A punishment may violate article I, section 17 of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted [(*Lynch*)].) It requires that we 'examine the circumstances of the offense' and the defendant in determining whether the 'the penalty imposed is "grossly disproportionate to the defendant's culpability." ' [Citation.] We assess three factors in making this determination: (1) the nature of the offense and the offender, and the degree of danger posed to society; (2) a comparison with sentences for more serious offenses under California law; and (3) a comparison with sentences imposed by other states for the same offense. (*Lynch*, at pp. 425–427.)" (*People v. Edwards* (2019) 34 Cal.App.5th 183, 191.)

Whether a punishment is cruel or unusual in violation of the California Constitution under the legal principles set forth in *Lynch, supra*, 8 Cal.3d 410, 424 through 427, "presents a question of law subject to independent review; it is 'not a discretionary decision to which the appellate court must defer.' [Citation.]" (*People v. Felix* (2003) 108 Cal.App.4th 994, 1000.)

The reduction of a sentence based on the determination it is cruel or unusual under the California Constitution " 'is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels.' [Citation.]" (*Ibid.*) Furthermore, such a reduction " ' "must be viewed as representing an exception rather than a general rule" ' " and " '[i]n such cases the punishment is reduced because the Constitution compels reduction, not because a trial court in its discretion believes the punishment too severe.' [Citation.]" (*Ibid.*)

McNeill acknowledges that his sentence "may not meet the three-part test set forth in *In re Lynch, supra,*" and does not attempt to argue any of the factors set forth above. Instead, he asserts that, because he was 18 years old at the time he committed the offenses, he—like any other person under the age of 26—was immature and less culpable than a person 26 years old or older, regardless of the crimes he committed. McNeill argues that his reduced culpability essentially renders the circumstances of the crimes and the fact that he committed the murder while committing a burglary and a robbery irrelevant. This is simply incorrect. That McNeill committed the murder in the course of committing two other felonies cannot be ignored— article I, section 17 requires that we " 'examine the circumstances of the offense' and the defendant.' " (*People v. Edwards, supra,* 34 Cal.App.5th at p. 191.)

In this case, McNeill broke into the home of an elderly woman who had previously taken him in, and over-powered and murdered her before stealing from her. McNeill inflicted multiple blunt force injuries on the victim's head, the back of her neck, her chest, knees, and hands. He broke the victim's spine and ribs.

8

Even taking into account his diminished culpability as a 18 year old, McNeill's crimes are such that the sentence does not exceed the constitutional limit.

## DISPOSITION

We affirm the trial court's order denying McNeill's motion for a youth offender parole hearing pursuant to Penal Code section 1203.1.

NOT TO BE PUBLISHED.

MOOR, J.

We concur:

BAKER, Acting, P. J.

LEE, J.<sup>*</sup>

---

<sup>*</sup>Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.