Filed 3/23/21  P. v. Yacoub CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GEORGE YACOUB,<br><br>    Defendant and Appellant. | B303247<br><br>(Los Angeles County<br>Super. Ct. No. MA017535) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1999, George Yacoub pled no contest to four felonies: recklessly causing a fire in an inhabited structure, manufacturing methamphetamine, possession of a controlled substance, and possession of a firearm by a felon. He also admitted suffering two prior "strike" convictions for residential burglary. The trial court granted Yacoub's *Romero* motion[1] in part, striking the prior conviction allegations as to one of the counts, but not the others. After passage of Proposition 47, the Safe Neighborhoods and Schools Act (hereinafter Proposition 47), Yacoub successfully moved for resentencing on his possession of a controlled substance conviction. In connection with that resentencing, he filed a new *Romero* motion, arguing that in light of various factors, including his prison conduct and accomplishments, the court should strike one or both of his prior conviction allegations as to the remaining counts. The court denied the *Romero* motion. Yacoub appeals, contending the denial was an abuse of discretion and his sentence amounts to cruel or unusual punishment. We disagree, and affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *Yacoub's commitment offense, sentence, and direct appeal*

In November 1998, Yacoub lived in a four-unit apartment building, and operated a methamphetamine laboratory inside his apartment. On November 16, 1998, the methamphetamine laboratory caused a fire. When Yacoub and a companion fled the

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[2] We derive the factual background from our opinion in Yacoub's direct appeal, which has been made part of the record.

building, an eyewitness called out that Yacoub's apartment was on fire. Yacoub stated that he knew, and that was why he was leaving. Police officers located Yacoub the next day. When they attempted to arrest him, he struggled and tried to grab at least one of the officers' guns. After he was subdued, officers found he was in possession of methamphetamine. A rifle was discovered in his burned apartment.

On May 20, 1999, Yacoub pled no contest to recklessly causing a fire in an inhabited building (Pen. Code, § 452, subd. (b),[3] count 1); manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a), count 2); possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 3); misdemeanor obstruction of a peace officer (§ 148, subd. (a)(1), count 6); and possession of a firearm by a felon (former § 12021, subd. (a), count 7). Yacoub admitted, as to counts 1 and 2, that he had been armed with a firearm during the offenses. (§ 12022, subds. (a)(1), (c).) He further admitted suffering, in 1993, two prior "strike" convictions for residential burglary. (§§ 459, 667, subds. (b)–(i), 1170.12, subds. (a)–(d).)

The court partially granted and partially denied Yacoub's *Romero* motion, striking the prior conviction allegations as to count 7, but declining to do so as to the remaining counts.[4]

---

[3]     All further undesignated statutory references are to the Penal Code.

[4]     The court also purported to strike the prior conviction allegation as to count 6, obstructing an officer in violation of section 148, subdivision (a)(1). However, this offense was a misdemeanor, and not subject to Three Strikes sentencing. (See § 667, subd. (a).)

It found that given the totality of the circumstances, granting the *Romero* motion in its entirety was unwarranted. Yacoub's activities showed a "total disregard" for human life; his conduct in attempting to grab the officer's weapon was violent; he had accumulated "a remarkable number of convictions" in his "relatively short life"; and he presumably lacked access to methamphetamine during his previous incarceration, yet went "back to his habit" when released. However, the court found partial grant of the motion appropriate in light of the facts that Yacoub was 24 years old; his two prior strikes were committed shortly after his 18th birthday; his criminal history appeared to be linked to his use of a controlled substance; it was unclear whether he was actually manufacturing methamphetamine or simply allowed his residence to be used for that purpose; and the fire was not intentionally set.

Accordingly, pursuant to the Three Strikes law, the court sentenced Yacoub to 25 years to life on count 1, and concurrent terms of 25 years to life on counts 2 and 3. It imposed determinate three-year terms on counts 6 and 7. Sentence on count 6 was ordered to run concurrently with sentence on count 1; sentence on count 7 was stayed pursuant to section 654.[5] In accordance with the negotiated plea, the court dismissed count 4 (possession of an assault weapon, § 12280, subd. (b)) and count 5 (attempted removal of a firearm from a peace officer, § 148, subd. (d)).

---

[5] In September 2018, after considering a letter from the Department of Corrections and Rehabilitation, the trial court resentenced Yacoub to one year concurrent on count 6.

4

In 2001, we affirmed Yacoub's judgment. (*People v. Yacoub* (Feb. 16, 2001, B137974 [nonpub. opn.].) Among other things, we rejected his contention that the trial court had abused its discretion by " 'selectively exercising its *Romero* discretion,' " that is, striking the prior conviction allegations as to some counts but not others.

2. *Proposition 36 and 47 petitions and denial of* Romero *motion*

In November 2012, California voters approved Proposition 36, the "Three Strikes Reform Act of 2012," which—in contrast to prior law—provided that a defendant is subject to a 25-years-to-life term under the Three Strikes law only if his or her current, third felony is itself serious or violent, or if certain exceptions apply. (*People v. Valencia* (2017) 3 Cal.5th 347, 350, 353–354; *People v. Perez* (2018) 4 Cal.5th 1055, 1062.) In 2014, the voters enacted Proposition 47, which reclassified certain drug and theft offenses from felonies or "wobblers"[6] to misdemeanors. (*People v. Valencia*, at p. 351.) Both enactments created procedures by which eligible persons serving sentences for offenses affected by the amendments could petition for resentencing. (See *id.* at pp. 350–351; §§ 1170.126, 1170.18.)

In 2013, Yacoub petitioned in the superior court for recall of his sentence and resentencing on counts 1, 2, and 3, pursuant to Proposition 36. The court issued an order to show cause (OSC) and briefing transpired over a period of several years. In February 2017, Yacoub filed a Proposition 47 petition seeking to

---

[6]    A "wobbler" is an offense that is chargeable or punishable as either a felony or a misdemeanor, depending on its seriousness. (*People v. Valencia, supra*, 3 Cal.5th at p. 351, fn. 2.)

have count 3, possession of a controlled substance, reduced to a misdemeanor.

Anticipating that the court would grant the requested Proposition 47 relief and resentence him on count 3, Yacoub also filed a new *Romero* motion, requesting that the court strike one or both of the prior conviction allegations on counts 1 and 2. He argued that he fell outside the spirit of the Three Strikes law because the commitment offenses and his prior strikes were remote in time and did not involve violence or injury; the strike priors were committed a few days apart, just after he turned 18 years old, and he served a single, concurrent California Youth Authority (CYA) term on both; his prior criminality was attributable to his substance abuse problem; his prison behavior and accomplishments demonstrated his rehabilitation; and he was 44 years old when the 2019 *Romero* motion was filed. Additionally, the sentencing judge (who had since retired) had indicated he was not opposed to commutation of Yacoub's sentence because he believed the time served was sufficient.

The People opposed the *Romero* motion, arguing, inter alia, that Yacoub's criminal history was extensive; his conduct during the commitment offenses was egregious; he had a disciplinary history while in prison for possession of contraband cellular telephones, money, and marijuana; he had been placed in administrative segregation as part of an investigation into allegations that he was involved in drug trafficking while incarcerated; and the original sentencing court had already ruled on the *Romero* motion. The resentencing court[7] found Yacoub

---

[7] For the sake of clarity, we hereinafter refer to the original sentencing court as the 1999 court and the court that denied Yacoub's *Romero* motion in 2019 as the resentencing court.

was ineligible for Proposition 36 resentencing on counts 1 and 2 because he had been armed with a firearm or deadly weapon during the offenses. It granted the Proposition 47 petition as to count 3, and resentenced Yacoub on that count to 364 days in any penal institution, with credit for 364 days served.

In October 2019, the court declined to exercise its discretion under *Romero* to strike either of the two prior felony conviction allegations on counts 1 or 2, reasoning as follows. Yacoub's current crimes were more serious than his priors, indicating the severity of his criminal conduct had increased. He had made no attempt to extinguish the fire or warn other residents of the danger, and the fire burned down two of the four units in the building. In prison, he had been found guilty of seven serious rules violations; the most recent, in April 2018, was for possession of a cell phone, which was "particularly troubling because cell phones are routinely used to conduct illicit business in and out of the prison walls." While Yacoub had "made some advances in education, self-help programming, and work history while incarcerated," the court did not find these advancements to be sufficient to support grant of the motion. The court also noted that at a September 2019 hearing, the Board of Parole Hearings (BPH) had denied parole for five years. "Most importantly," the court reasoned that "petitioner has received extensive *Romero* consideration by both the trial court which denied the motion and the Court of Appeal which upheld the trial court's ruling. . . ."

## DISCUSSION

1. *The resentencing court did not abuse its discretion by denying Yacoub's* Romero *motion*

Yacoub argues that the 2019 denial of his *Romero* motion was an abuse of discretion. We disagree.

a. *Applicable legal principles*

In furtherance of justice, a trial court may strike or dismiss a prior conviction allegation.  (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at p. 504.)  When considering whether to do so, it considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161; *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124.)  The court must also consider the defendant's constitutional rights and society's interest in the prosecution of crimes.  (*People v. Johnson* (2015) 61 Cal.4th 674, 688–689.)

We review the court's ruling under the deferential abuse of discretion standard; that is, the defendant has the burden to show that the sentencing decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).) It is " 'not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Id.* at p. 378.)  The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . .  [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.*)  Thus, a court abuses its discretion when it was unaware of its discretion to strike, considered impermissible factors, failed to consider relevant factors, or rendered a ruling that is arbitrary, capricious or patently absurd under the specific facts of the particular case. (*Ibid.*; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141 (*Avila*).)

Our Supreme Court has explained that only extraordinary circumstances justify a finding that a career criminal is outside the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*) " ' "In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.]" (*Id.* at pp. 376–377.) " ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Id.* at p. 377.) However, not every recidivist falls within the spirit of the Three Strikes law. The fact that only extraordinary circumstances justify deviating from the Three Strikes sentencing scheme does not mean such cases do not exist. (*Avila*, *supra*, 57 Cal.App.5th at p. 1140.)

When part of a sentence is modified pursuant to Proposition 47, a full resentencing as to all counts is appropriate. (*People v. Buycks* (2018) 5 Cal.5th 857, 893–894; see *People v. Hubbard* (2018) 27 Cal.App.5th 9, 12.) In light of this principle, *People v. Hubbard* concluded that, when a defendant's sentence is recalled pursuant to Proposition 36, the trial court has jurisdiction to consider a request for discretionary relief under section 1385 and *Romero*. (*People v. Hubbard*, at pp. 12–13; cf. *People v. Buycks*, at p. 893 [when part of a sentence is stricken on review, on remand " 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].) The same is true regarding a Proposition 47 resentencing.

b. *Application here*

In the instant matter, we discern no abuse of discretion. The resentencing court expressly recognized that it had the authority to reconsider the entire sentence. It articulated the appropriate standard as stated in *People v. Williams*, *supra*, 17 Cal.4th at page 161, i.e., that it was required to consider the nature and circumstances of the current and prior felonies and the particulars of Yacoub's background, character, and prospects. It did not consider impermissible criteria. It expressly discussed, in its written ruling, the facts of the commitment offense, Yacoub's criminal history, and his prison record.

Yacoub nonetheless contends the resentencing court failed to consider most of the relevant factors, including the circumstances of his convictions, his age, drug addiction, and prison history. The record does not support this contention. At the hearing, defense counsel focused her remarks on many of these points; all were stressed in Yacoub's written motion. The motion incorporated by reference exhibits and materials that Yacoub had presented to the resentencing court in regard to the Proposition 36 and 47 petitions, including numerous documents regarding his prison record and accomplishments. There is thus no basis for us to assume the resentencing court ignored these arguments and materials.[8] Instead, we presume the court considered all the relevant factors in the absence of an

---

[8] Yacoub faults the resentencing court for providing only a "cursory evaluation" of his prison accomplishments in its written ruling, arguing this demonstrates inadequate consideration of the materials presented. But the resentencing court was not required to provide a lengthy or detailed analysis of every document presented or point made.

10

affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749.)

The real crux of Yacoub's arguments appears to be that the resentencing court did not accord sufficient weight to these factors. We address his arguments regarding each factor in turn, and conclude the resentencing court's evaluation was neither arbitrary nor capricious.

(i) *Circumstances of the commitment offenses*

Yacoub suggests that the circumstances of the commitment offenses did not support denial of his motion. He argues that, although the fire caused "extensive damage to property," no one was injured; furthermore, "the evidence was not clear that appellant even directly participated in the activity that caused the fire." But the fire originated with the methamphetamine laboratory in his apartment. He pled no contest to manufacturing methamphetamine and to recklessly causing the fire. His pleas established his direct participation. The fact there were no injuries was not attributable to him; he fled without alerting other residents or calling the fire department. These actions were both callous and highly dangerous. As he acknowledges, the fire could have caused grave harm. As the 1999 court reasoned—and Yacoub's counsel acknowledged at the original sentencing hearing—"operating a methamphetamine laboratory in an apartment building shows a total disregard for the safety of the other people in the apartment building."

In a supplemental brief, citing this Division's recent opinion in *Avila*, Yacoub argues that the 1999 court improperly "speculat[ed]" that the fire "could very well have cost the lives of several people in that apartment building," and the resentencing

11

court simply relied on this finding. The 1999 court's analysis was improper, he urges, because a ruling on a *Romero* motion "requires consideration of the nature and circumstances of the crime actually committed, not a crime that might have occurred." (*Avila*, *supra*, 57 Cal.App.5th at p. 1142.)

This contention fails for several reasons. First, it is not clear that the resentencing court simply adopted the 1999 court's reasoning rather than independently coming to its own, common sense-based, conclusions. Second, if Yacoub believed the 1999 court abused its discretion by reasoning that the fire could have caused the loss of life, he should have objected at the original sentencing hearing or raised that contention in his original appeal. He did neither, and the argument is therefore waived. (Cf. *People v. Jordan* (2018) 21 Cal.App.5th 1136, 1144–1145; *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347 & fn. 9.)

Third, *Avila* does not stand for the proposition that a court is precluded from determining that a potential danger to others inheres in an offense. In *Avila*, the defendant demanded money (or "rent") from two persons who were selling oranges near a freeway off-ramp, and stomped on their bags of oranges. (*Avila*, *supra*, 57 Cal.App.5th at p. 1139.) The trial court denied Avila's *Romero* motion, reasoning, among other things, that "had someone not called the police, 'who knows what would have happened.' " (*Id.* at p. 1142.) *Avila* concluded that the court's speculation about what might have happened "impl[ied] the infliction of physical harm to the victims that never appeared in the evidence at trial. Sentencing is not the proper venue for the trial court's imagination." (*Ibid.*) In contrast, the resentencing court here did not imagine that Yacoub had committed an uncharged future crime; it reasonably considered the potential

12

consequences from an actual fire that Yacoub actually started, that actually burned part of the apartment building.[9]

Further, the facts in *Avila* are readily distinguishable from the facts here.  In *Avila*, the defendant's current offense was squashing oranges in a failed attempt to commit extortion or robbery.  (*Avila*, *supra*, 57 Cal.App.5th at p. 1142.)  Yacoub's current offenses, in contrast, were manufacturing methamphetamine in a residential apartment building, resulting in a fire that burned a portion of that building, while possessing a firearm and methamphetamine.  The commitment offenses in the two cases are not comparable.

(ii)  *Consideration of Yacoub's strike priors and criminal history*

Yacoub argues that the resentencing court gave inappropriate weight to several factors related to his criminal history and the prior strike convictions: his minimal prior record, the absence of violence, the remoteness of the prior strike offenses, and his youth.

According to a probation report, in March 1991 Yacoub suffered a sustained juvenile petition for shooting at an

---

[9]     Yacoub also complains that the 1999 court abused its discretion by considering the fact that "[w]hile [Yacoub] was manufacturing methamphetamine and arming himself with firearms . . . he was cohabiting with a minor, and got her pregnant."  It is far from clear that the 1999 court actually relied upon the cohabitation and pregnancy as a basis for its decision; it mentioned these circumstances only once, in passing.  Even if it had relied on these facts, Yacoub failed to object or raise the issue in his direct appeal.  And there is no showing that the cohabitation and pregnancy factored into the resentencing court's decision.

uninhabited building, a barn (§ 247, subd. (b)), and was placed home on probation. In May 1992, another juvenile petition, alleging residential burglary (§ 459) was sustained, and Yacoub was sent to camp. Yacoub committed the two "strike" priors a few days after his 18th birthday. In the first strike prior, on December 14, 1992, Yacoub smashed open the garage door to a residence, ransacked the home, and stole a handgun, electronics, money, and wrapped Christmas gifts. He pawned or sold some of the items. On December 17, 1992, Yacoub and two compatriots kicked down the door of a Palmdale residence and stole $4,500 worth of property, including a pistol, a rifle, money, electronics, and jewelry. Yacoub pled guilty to burglary in both cases and was sentenced to the low term of two years, with sentence on both cases to be served concurrently at the California Youth Authority. In December 1995, he was charged with another burglary and petty theft with a prior, a violation of his parole. He pled no contest to misdemeanor petty theft, and was sentenced to a year in jail. The commitment offenses occurred in November 1998.

Thus, Yacoub's record is not as insignificant as he suggests, and the resentencing court correctly reasoned that the severity of his crimes had increased over time. As the 1999 court opined, "in his relatively short life Mr. Yacoub has accumulated a remarkable number of convictions for criminal offenses[.]" Although Yacoub argues that his offenses were all nonviolent, the resentencing court could reasonably have discounted this argument. Certainly, the fact that a defendant's crimes did not include actual violence may be, in combination with other factors, a circumstance showing he or she falls outside the spirit of the Three Strikes sentencing scheme. (*Avila*, *supra*, 57 Cal.App.5th

14

at pp. 1140–1141.)  But notably, almost all Yacoub's offenses involved firearms: he fired shots at a building in his first offense, stole guns in each of the 1992 burglaries, and possessed a gun when manufacturing methamphetamine.  He also attempted to grab an officer's firearm when arrested.  Moreover, burglary laws " ' "are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." ' " (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 275.)

*People v. Garcia* (1999) 20 Cal.4th 490, cited by Yacoub, does not compel a contrary conclusion.  There, the trial court struck prior conviction allegations as to one count but not another, resulting in a sentence of 31 years and four months to life.  (*Id.* at pp. 495, 503.)  Our Supreme Court held that the court's decision to strike the prior conviction allegations as to one of the counts did not fall outside the bounds of reason because, among other things, the prior strikes all arose from a single period of aberrant behavior for which the defendant served a single prison term.  (*Id.* at p. 503.)  Assuming arguendo that Yacoub's two prior strikes also arose from a single period of aberrant behavior, *Garcia* did not hold that the court was *required* to strike the priors, just that doing so was not outside the bounds of reason.  (*Ibid.*)  And, the 1999 court's ruling was similar to that in *Garcia*: it granted the *Romero* motion in part.

We are not persuaded that the resentencing court should have found the remoteness of Yacoub's prior strikes was a mitigating circumstance.  (See *Avila*, *supra*, 57 Cal.App.5th at

15

p. 1141 [remoteness is a factor in mitigation, but is insufficient, by itself, to remove a defendant from the spirit of the Three Strikes law].) Comparing himself to Avila—whose strike priors occurred over 25 years before the commitment offenses—Yacoub argues that his strike priors were likewise remote at the time of resentencing, because he has been incarcerated for two decades. But the remoteness factors do not operate to Yacoub's advantage here. Remoteness is a mitigating factor where it "carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; see *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [leading a crime-free life between the strike priors and current crimes "would give significance to the remoteness in time of those strikes"].) As he acknowledges, Yacoub's priors were not remote when he committed the current offenses. Since then, he has been incarcerated, where, presumably, his opportunities to commit crimes are curtailed. The passage of time, therefore, is not a mitigating circumstance in the sense discussed in *Avila.* Indeed, under Yacoub's theory, whenever a Three Strikes defendant has served a significant portion of his or her sentence, the strike priors would *always* be deemed remote, potentially creating an end run around Proposition 36—which provides that some inmates, such as Yacoub, are ineligible for relief.

Yacoub further argues that his age at the time of the prior strikes and the commitment offenses "should warrant striking the two strike priors."[10] While Yacoub's age is not dispositive, we

---

[10] Yacoub also argues that his current age, 45 at the time he was resentenced, "mirrors that of" the *Avila* defendant, and is a

16

agree that it is a mitigating factor. (See *Avila, supra*, 57 Cal.App.5th at pp. 1141–1142.) "This is in line with the increasing recognition that young adults are constitutionally different from adults for sentencing purposes because of their diminished culpability and greater prospects for reform." (*Id.* at p. 1142; see *Roper v. Simmons* (2005) 543 U.S. 551, 569–570.) But here, unlike in *Avila*, there is no indication that the resentencing court believed it could not consider age as a mitigating factor. (See *Avila*, at p. 1142.) Further, the 1999 court expressly took Yacoub's age into consideration and found it supported partial grant of the *Romero* motion. Thus, his age has been taken into account in formulating his sentence.

(iii) *Drug addiction and steps toward recovery*

Next, Yacoub argues that the trial court erroneously ignored his "struggle with drug addiction and his efforts to combat it." Longstanding drug addiction can be a mitigating factor if the defendant has taken steps to address the problem; it has little mitigating value where the opposite is true. (*Avila, supra*, 57 Cal.5th at pp. 1143–1144; *People v. Gaston, supra*, 74 Cal.App.4th at p. 322; *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511; *People v. Williams, supra*, 17 Cal.4th at p. 162.)

---

mitigating factor. Not so. In *Avila*, we explained that Avila's age, 47 *when sentenced*, was relevant to consideration of his background, character, and prospects. (*Avila, supra*, 57 Cal.App.5th at p. 1144.) "Although Avila's middle-age status alone does not remove him from the spirit of the Three Strikes law [citation], given his age, his three strikes sentence coupled with the determinate term means he will likely die in prison." (*Ibid*.) Yacoub was not middle-aged when sentenced; he was 24. He has already served enough time to be considered for parole. Thus, Yacoub does not stand in the same position as Avila.

Here, Yacoub presented documentation to the resentencing court that he has participated in Alcoholics Anonymous and/or Narcotics Anonymous groups from 2010 through 2019, and in 2002 and 2003, while incarcerated. In April 2019, he completed a Substance Abuse Treatment Group program that entailed 105 hours of cognitive behavioral therapy. In April 2018, he completed a Criminon "Overcoming Addiction" course. And in 2014, he completed an intensive 16-session treatment program conducted by the Addiction Recovery Counseling program. Yacoub's efforts to address his methamphetamine addiction are admirable and mitigate in his favor. And, indeed, the 1999 sentencing court cited as one of the factors supporting its partial grant of the original *Romero* motion that Yacoub's criminal history "appears to be related to the consumption of . . . [a] controlled substance."

(iv) *Prison record and accomplishments*

Yacoub further points to his prison record as evidence he falls outside the spirit of the Three Strikes law. While incarcerated he has obtained his general education development (GED) certificate, and has worked toward his Associate of Arts degree and a certificate in a business program, in addition to taking other courses and obtaining good grades. He has also completed or participated in multiple programs—some quite lengthy—geared to assist prisoners with taking responsibility for the impact of their crimes and making improvements in their lives in areas such as, inter alia, communication and anger management.

He has been employed in a variety of jobs while incarcerated, such as working as a clerk, lead porter, disability assistant, and custodian, among other positions, and has received

18

exceptional or above average reviews. Supervisors have characterized him as courteous, hard working, efficient and responsible, honest, and intelligent, with a "great learning ability" and a "great attitude." He has also earned certificates in a variety of vocational disciplines and participated in community service oriented activities. Laudatory "chronos" and memoranda from prison personnel praise his honesty, work performance, work ethic, reliability, maturity, commitment to rehabilitation, personal growth, and remorse, and opine that he would be an asset to the community in the future.

While incarcerated, Yacoub has committed six serious rules violations. In November 2010, June 2011, and April 2018, he was found in possession of cellular telephones, one hidden inside a hollowed-out bar of soap. In September 2008, he was found in possession of two $50 bills hidden in a compact disc case. In February 2011, he tested positive for marijuana after a dog alerted to lockers in his cell, and was found guilty of possessing marijuana. In 2002, he was twice found to have disobeyed a direct order. He also received one administrative rules violation in December 2000, for failing to obey an order to return to his cell.

Yacoub's educational and programming achievements, as well as his favorable work history, are commendable indeed, and tend to support a conclusion that he no longer falls within the spirit of the Three Strikes law at the time of resentencing. However, his rules violations over the years provide some counterbalance to his achievements. In particular, his repeated possession of cellular telephones, his possession of contraband money, and marijuana, suggest he is not always able to conform to the institutional rules and, at least as of 2011—when he was

attending AA or NA—he had not fully conquered his substance abuse issues. While most of these violations were not recent, the 2018 cellular telephone possession was. The fact the violation was the same as two prior violations suggests whatever motivated him to violate prison rules and possess the phones in 2010 and 2011 is still a concern.

(v) *Conclusion*

In light of Yacoub's age when he committed the strike priors and commitment offense, his attempts to address his substance abuse problems while in prison, and the other favorable aspects of his prison record, a reasonable person might view him as outside the spirit of the Three Strikes law. But, a reasonable person considering the serious nature of his commitment offenses, his criminal history, some aspects of his prison conduct, and the fact his youth and drug problems were already taken into account in the 1999 court's original sentence, might conclude otherwise. In short, Yacoub has not shown that this is an extraordinary case in which no reasonable person could agree that he falls within the spirit of the Three Strikes law. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.) Under these circumstances, we are not " 'authorized nor warranted in substituting' " our judgment for that of the trial court. (*Id.* at p. 377.) Accordingly, we must affirm the resentencing court's order.

2. *Yacoub's sentence does not amount to cruel or unusual punishment*

In his supplemental brief, Yacoub argues that his sentence of 25 years to life amounts to cruel or unusual punishment under the California Constitution.

20

The record before us does not reflect that Yacoub objected that his sentence was cruel or unusual at either the 1999 sentencing or the 2019 resentencing.  Accordingly, he has forfeited this claim.  (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247 [a defendant's "failure to contemporaneously object that his sentence constitutes cruel and unusual punishment forfeits the claim on appellate review"]; see *People v. Baker* (2018) 20 Cal.App.5th 711, 720.)

His contentions fail on the merits in any event.  A punishment is cruel or unusual in violation of the California Constitution "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424; *Avila*, *supra*, 57 Cal.App.5th at p. 1145; *People v. Baker*, *supra*, 20 Cal.App.5th at p. 723.)  "In our tripartite system of government, the legislative branch defines crimes and prescribes punishment.  [Citation.]  It is therefore the rare case where a court could declare the length of a sentence mandated by the Legislature unconstitutionally excessive."  (*Avila*, at p. 1145; *People v. Baker*, at p. 724 [" 'Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive' "].)

*In re Lynch* described three "techniques" used in determining whether a sentence is cruel or unusual under the California Constitution: (1) examination of the nature of the offense and/or the offender; (2) comparison of the punishment with that prescribed for more serious crimes in California; and (3) comparison of the punishment with that given for the same offense in other jurisdictions.  (*In re Lynch*, *supra*, 8 Cal.3d at

21

pp. 425–427; *Avila, supra,* 57 Cal.App.5th at p. 1145; *People v. Baker*, *supra,* 20 Cal.App.5th at p. 723.)

Yacoub does not address the second and third prongs of the *Lynch* inquiry. Accordingly, we focus on the first: the nature of the offense and the offender. (See *People v. Em* (2009) 171 Cal.App.4th 964, 972.) "In assessing the nature of the offense, a court should consider the circumstances of the particular offense such as the defendant's motive, the way the crime was committed, the extent of his involvement and the consequences of his acts. [Citation.] In analyzing the nature of the offender, a court should consider his 'age, prior criminality, personal characteristics, and state of mind.' [Citation.]" (*People v. Felix* (2002) 108 Cal.App.4th 994, 1000; *Avila, supra,* 57 Cal.App.5th at p. 1146.) Whether a punishment is cruel or unusual is a question of law that we independently review; however, we consider any disputed facts in the light most favorable to the judgment. (*People v. Edwards* (2019) 34 Cal.App.5th 183, 190; *People v. Mantanez* (2002) 98 Cal.App.4th 354, 358.)

Examination of these factors does not demonstrate that Yacoub has met his burden to show his case is one of those rarities in which the sentence is cruel or unusual.

There is little about the nature of the offense to suggest disproportionality. Under the circumstances here, recklessly causing a fire was an extremely serious offense. The fire was caused by Yacoub's choice to illegally manufacture methamphetamine in a residential apartment building, not by some legal, but reckless, activity that went awry. Manufacturing methamphetamine in a residential building is an explosive combination. It is common knowledge that the manufacturing process is fraught with the danger of an explosion or fire. When a

fire actually erupted, Yacoub took no steps to mitigate the harm his conduct caused: he left without alerting other occupants of the apartment building or calling the fire department, demonstrating his utter disregard for the safety of anyone but himself. The consequences of his actions were serious: while the monetary loss caused by the fire is not reflected in the record, he does not dispute that the property damage must have been extensive. His actions also put first responders at risk. And, he illegally possessed a firearm in the apartment. The Legislature has enacted numerous laws enhancing sentences when firearms are involved, demonstrating that Yacoub's firearm possession made the offense even more serious. (See generally *People v. Palacios* (2007) 41 Cal.4th 720, 725 [noting legislative intent behind section 12022.53].)

It is a reasonable inference that Yacoub's motivation was the production of methamphetamine for sale, for personal gain. The fact he had a gun in the apartment reinforces this inference. Aiming to put an illicit drug into the illegal supply chain is not a motive suggesting disproportionality. Although Yacoub argues he only intended to make the drug for personal use, this conclusion is not compelled by the record, and we view the facts in the light most favorable to the judgment. (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 190.) Yacoub's pleas indicate he was directly responsible for the methamphetamine laboratory, not just a passive participant who allowed someone else to use his apartment, as he suggests. Yacoub's offense stands in sharp contrast to that of the *Avila* defendant, who simply caused $20 in damage when he "squashed oranges and was sentenced to life" as the result of a weak attempt at extortion and robbery. (See *Avila*, *supra*, 57 Cal.App.5th at pp. 1146–1147.) We cannot say the

23

nature of the offense is such that the sentence imposed shocks the conscience.

As to the nature of the offender, Yacoub was almost 24 years old when he committed the current offense. While he was youthful, he was not a juvenile. (See generally *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482 [rejecting argument that sentence was categorically cruel and/or unusual because defendant committed offense when he was only 18 years, 5 months old]; *People v. Perez* (2016) 3 Cal.App.5th 612, 617; *People v. Edwards*, *supra*, 34 Cal.App.5th at p. 190.) Moreover, he had already committed three burglaries, but failed to learn from the less severe consequences imposed on those offenses. As we have discussed *ante*, neither the "strike" burglaries nor Yacoub's criminal history are insignificant. Regarding his drug addiction, as the 1999 court pointed out, he presumably lacked access to methamphetamine during his previous incarceration, yet went "back to his habit" when released. While "[i]t is notable that defendant appears to have become seriously committed to seeking treatment after incarceration on charges carrying a life term," the "law still holds such an individual responsible for his or her behavior." (*People v. Martinez*, *supra*, 71 Cal.App.4th at p. 1511.) Further, Yacoub is " 'not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses. [Citations.]' " (*People v. Mantanez*, *supra*, 98 Cal.App.4th at p. 366.) And, as we have explained in regard to the *Romero* motion, the remoteness of the priors is not significant here.

24

Yacoub points out that since he was sentenced in 1999, the law has undergone significant changes, demonstrating that "legislators and courts are reconsidering the length of sentences in different contexts to decrease their severity." (*Avila*, *supra*, 57 Cal.App.5th at p. 1151.) This is certainly true, as we stated in *Avila*. But notably, these ameliorative changes do not apply to Yacoub: under Proposition 36, he is ineligible for relief because he was armed with a firearm during the current offense. (§ 667, subd. (e)(2)(C)(iii); *People v. Johnson*, *supra*, 61 Cal.4th at p. 681.) Rather than suggesting his sentence is unconstitutional, the Proposition 36 exclusion for being armed with a firearm highlights the seriousness of Yacoub's current offense.

In sum, Yacoub's sentence is not grossly disproportionate.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

25